UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

  Plaintiff,

v.

Joseph L. Finney (01), and
Mark S. Sutton (02),

  Defendants.

Criminal No. 09-349 DWF/SRN

**REPORT AND RECOMMENDATION**

---

  Robert Lewis, Esq., United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415 for Plaintiff.

  Clifford Barnard, Esq., 4450 Arapahoe Ave. Suite 100, Boulder, Colorado 80303 and Kevin O'Brien, Esq., O'Brien Law Office, 247 3rd Ave. S, Minneapolis, Minnesota 55415 for Defendant Finney.

  William M. Orth, Esq., Law Office of William M. Orth, 247 3rd Ave. S Suite 100, Minneapolis, Minnesota 55415 for Defendant Sutton.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

  The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Finney's (01) Motion for Severance from Co-Defendant Mark Sutton and Count 3 [Doc. No. 41], and Defendant Sutton's (02)[1] Motion to Suppress Statements [Doc. No. 30], and Motion to Sever Count 3 [Doc. No. 36]. This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.[2]

---

  [1] Defendant Sutton's Motion to Suppress Search Warrant Proceeds [Doc. No. 31] will be addressed by another magistrate judge in a separate Report & Recommendation.
  [2] The Court has addressed Defendants' non-dispositive motions in a separate Order.

## I. BACKGROUND

The Government filed an Indictment against Defendants Joseph L. Finney (01) and Mark S. Sutton (02) on November 17, 2009 [Doc. No. 1] charging both Defendants with conspiracy to commit mail fraud and wire fraud and with a money laundering conspiracy and charging Defendant Sutton with an additional count of conspiracy to defraud the United States. Specifically, the Indictment alleges that the Defendants operated a ponzi scheme by offering and selling purportedly high-yield investments, asserting the investments were recognized or guaranteed by certain government agencies or recognized financial community members, and asserting that the investments were safe. The Defendants allegedly took invested funds for their own personal use instead of investing the funds, and used the invested funds to repay or provide purported returns on prior investments "in order to maintain the illusion of a successful, secure investment program." Some of the funds were paid into the account of a company owned and operated by Sutton called Midwest Consultants, LLC. The indictment alleges Sutton used false liens asserted through an entity using the name "Midwest" to hide assets from investors (Counts 1 and 2) and from the Internal Revenue Service (IRS) (Count 3).

This Court held a pre-trial motions hearing on April 9, 2010. Special Agent Daniel Nye testified on behalf of the Government. After the hearing, the Court received into evidence Government Ex. 1: Search Warrant, Application for Search Warrant, and Supporting Affidavit. This matter is set for trial before United States District Judge Donovan W. Frank on May 10, 2010.

## II. FACTS

The following facts are taken from the testimony of Special Agent Daniel Nye at the hearing on April 9, 2010. Special Agent Nye, the case agent for the instant matter, has been

employed by the IRS criminal investigation division in Minneapolis for the past 27 years. On November 21, 2006, Agent Nye participated in the execution of a search warrant at Defendant Sutton's residence. Approximately ten agents were involved in the search of the residence. Defendant Sutton and his wife were present in the home during the execution of the warrant. When the agents first arrived, Defendant Sutton was agitated and confrontational. He refused the officers' directions to sit down and be quiet and made remarks suggesting the agents did not have a right to be there. Agent Nye could not recall if he gave Defendant Sutton a copy of the warrant when the officers entered the residence, but he testified that he told Defendant Sutton the officers had a warrant and the agents left a copy of the warrant at the home.

While the search warrant was being executed by other agents, Agent Nye and FBI agent Mike Winslow interviewed Defendant Sutton and his wife. The interview, which took place in the office area of the house, began within ten minutes after the search warrant was executed. By that time, Defendant Sutton had calmed down. The agents informed the Suttons that they were not going to be arrested that day, and in fact, the Suttons were not arrested that day. The agents also told the Suttons they were free to leave. Further, the agents told the Suttons that they were not obligated to speak to them, but that the agents would, nevertheless, like to speak to them. It appeared to Agent Nye that Defendant Sutton understood that he was free to leave and that he was not going to be arrested. While the agents were armed, Agent Nye could not recall if their weapons were visible under their jackets. Defendant Sutton and his wife then agreed to speak to the agents. Agent Nye testified that Defendant Sutton answered his questions in a clear and coherent manner and that, during the interview, Defendant Sutton was calm and polite. This first part of the interview lasted from approximately 10:00 a.m. to 11:15 a.m. At approximately 11:15 a.m., Defendant Sutton stated that, even though the agents were being polite to him, he felt

intimidated and wanted to speak to an attorney. The agents ended the interview and Defendant Sutton called a pre-paid legal service outside of the presence of law enforcement officers.

At approximately 12:00 p.m., the agents asked Defendant Sutton if he had talked to the lawyer and Defendant Sutton responded that he had. Defendant Sutton stated the lawyer told him that he could speak to the agents but that anything he said could be used against him. Despite this acknowledgement, Defendant Sutton agreed to answer more questions from the agents. The agents spoke to Sutton for approximately 30-45 more minutes. Around 1:00 p.m., Defendant Sutton and his wife left the house.

### III. DISCUSSION

#### A. Defendants' Motions for Severance

Pursuant to Fed. R. Civ. P. 8 and 14, Defendant Sutton seeks severance of Count III of the Indictment. Defendant Finney seeks to sever his trial from Defendant Sutton and Count II of the Indictment. Because the counts of the Indictment relate to a common plan or scheme, joinder is appropriate in this case.

The propriety of joinder, pursuant to Fed. R. Crim. P. 8, is determined on the face of the indictment. United States v. Bledsoe, 674 F.2d 647, 655 (8th Cir. 1982); United States v. Sanders, 563 F.2d 379, 382 (8th Cir. 1977). Rules 8(a) and 8(b) should be liberally construed in favor of joinder. United States v. Darden, 70 F.3d 1507, 1526 (8th Cir.1995); United States v. Bledsoe, 674 F.2d 647, 655 (8th Cir. 1982). Reading Rule 8 broadly is justified for the initial evaluation of joinder because Fed. R. Civ. P. 14 is still available at trial. Bledsoe, 674 F.2d at 655; United States v. Rodgers, 732 F.2d 625, 628-29 (8th Cir. 1984). Fed. R. Crim. P. 8(a) provides:

> **Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the

4

> offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(b) provides:

> **Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"The primary distinction is that Rule 8(a) allows for the joinder of offenses that are of the same or similar character, whereas Rule 8(b) does not and thus provides for joinder in fewer situations." United States v. Southwest Bus Sales, Inc., 20 F.3d 1449, 1453 (8th Cir. 1994) (internal citations omitted).

While the headings and wording of the two rules might suggest otherwise, courts have concluded that Rule 8(a) applies only to single defendants challenging joinder of offenses in a single trial or when multiple defendants, who are all charged with the same offenses, challenge the joinder of offenses. Id. at 1453-54. In cases involving multiple defendants, who are not all charged with each offense, the analysis of the joinder of offenses is governed by Rule 8(b). Id.; United States v. Jones, 880 F.2d 55, 61 (8th Cir. 1989); Williams v. United States, 416 F.2d 1064, 1068 (8th Cir. 1969); United States v. Finn, 919 F. Supp. 1305, 1323 (D. Minn. 1995); see also 1A Charles Alan Wright, Federal Practice & Procedure § 144 (4th Ed. & Supp. 2010). The court in Jones provided the rationale for the rule:

> When similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses. Rule 8(a) permits the first sort of prejudice and Rule 8(b) the second. But the Rules do not permit

> cumulation of prejudice by charging several defendants with similar but unrelated offenses.

Jones, 880 F.2d at 61 (citing Cupo v. United States, 359 F.2d 990, 993 (D.C. Cir. 1966)).

Under Rule 8(b), the mere similarity of offenses committed by two or more individuals is not a sufficient predicate for joinder. United States v. Bledsoe, 674 F.2d 647, 656 (8th Cir. 1982). Rather, an offense is properly joined under Rule 8(b) if it was alleged to be part of the same series of acts or transactions that constituted the other charged offenses. Jones, 880 F.2d at 61. Generally, Courts construe the phrase "the same series of acts or transactions" to mean acts or transactions that are pursuant to a common plan or common scheme, or part of a single conspiracy. Id.; United States v. Wadena, 152 F.3d 831, 848 (8th Cir. 1998).

Even when Fed. R. Crim. P. 8 permits joinder, under Fed. R. Crim. P. 14 a court may order separate trials on different counts, or sever certain defendants' cases from each others', in order "to protect defendants' fair-trial rights." United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996). Under this rule, the trial court has the discretion to order severance if it appears that a defendant will be prejudiced by the joinder. United States v. Flores, 362 F.3d 1030, 1039 (8th Cir. 2004). When joinder is proper under Rule 8, the defendant seeking a severance under Rule 14 has the burden of demonstrating that a joint trial will prejudice his or her right to a fair trial. United States v. Darden, 70 F.3d 1507, 1527 (8th Cir. 1995) (citing United States v. Penson, 62 F.3d 242, 244 (8th Cir. 1995)). The prejudice must be severe or compelling. Id. As with Rule 8, the presumption is against severance and in favor of joinder. Delpit, 94 F.3d at 1143.

### 1. Defendant Sutton's Motion for Severance of Count III

Defendant Sutton asserts that Counts I and II are misjoined with Count III because the counts allege two separate conspiracies, which are not of the same or similar character. In Wadena, the defendants were members of the Reservation Tribal Council of the White Earth

6

Band, one of the six constituent bands of the Minnesota Chippewa Tribe. Wadena, 152 F.3d at 848. The defendants were charged with three conspiracies: (1) a construction conspiracy relating to the misapplication of funds and money laundering in the construction of a casino under the White Earth Reservation Land Settlement Act from 1990-1992; (2) a commissions conspiracy relating to misappropriation, theft, and bribery in the creation of two functionless commissions used to funnel money to the defendants from 1990-1993; and (3) an election conspiracy for conspiracy to oppress free exercise of tribal election rights relating to fabricated and falsified absentee ballots in a 1994 election. Id. at 837-39. One of the defendants, Clark, moved to sever the counts related to the election conspiracy from the counts related to the other two conspiracies alleging the two groups of counts involved separate conspiracies, not one overall scheme. Id. at 847-48. In response, the Government argued that joinder was proper because there was an overlap in the persons involved in the conspiracies and all the conspiracies involved the goal of making money through misapplication of tribal funds for the defendants' personal use. Id. Despite the apparent lack of relation of the conspiracies in time and method, the court held that joinder was proper under Fed. R. Crim. P. 8(b) because all the conspiracies were for the purpose of a common scheme for the defendants to use their positions to access tribal funds and to use those funds for personal gain. Id. at 848.

The Indictment in this case presents a situation similar to Wadena. Because this case involves multiple defendants who are not all charged with the same counts, it is appropriate for this Court to analyze the propriety of joinder under Fed. R. Crim. P. 8(b). The Indictment in this case alleges two conspiracies. Counts 1 and 2, asserted against both Defendants, charge a conspiracy to commit wire and mail fraud and money laundering relating to an alleged investment company ponzi scheme. The third count, asserted only against Defendant Sutton,

charges a conspiracy to defraud the United States by tax evasion. Just as the counts in Wadena all related to a scheme to take tribal funds for personal use, in this case the conspiracies both relate to the fraudulent concealment of assets, from both investors and the IRS, which is a common plan or scheme. The Government also alleges an overlap of persons involved in the conspiracy and states that at least one witness will testify regarding Defendant Sutton's involvement in both conspiracies. Given the liberal construction of Rule 8, these counts are not misjoined. Therefore, this Court recommends that Defendant Sutton's motion for severance be denied.

Defendant also based his motion on Fed. R. Crim. P. 14. He did not, however, articulate in his motion papers or at the hearing how trying all three counts would be unfairly prejudicial and result in an unfair trial. Defendant Sutton has not met his burden under Rule 14 at this pretrial stage. Further, because the motion under Rule 14 is an issue of trial management, it is more appropriate for the Honorable Judge Frank to resolve the motion. Therefore, this Court recommends that Defendant Sutton's motion for severance be denied.

### 2. Defendant Finney's Motion for Severance of Defendants

Because he is not charged in Count III of the Indictment for conspiracy to defraud the Government, Defendant Finney seeks to sever his trial from that of Defendant Sutton's. "There is a preference in the federal system for joint trials of defendants who are indicted together. Zafiro v. United States, 506 U.S. 534, 537, 113 S. Ct. 933, 937 (1993) (citing Richardson v. Marsh, 481 U.S. 200, 209, 107 S. Ct. 1702, 1708, 95 L. Ed. 2d 176 (1987)). Joint trials "play a vital role in the criminal justice system." Id. This is because joint trials are more efficient and help to avoid inconsistent verdicts. Id.

In order to be properly joined under Fed. R. Crim. P. 8(b), not every defendant joined must have participated in every offense charged. Jones, 880 F.2d at 62-63. "In general, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." Jones, 880 F.2d at 63, cited in United States v. Donnell, 596 F.3d 913, 923 (8th Cir. 2010). In order to be part of the same series of acts or transactions under Rule 8(b), the acts must be part of one overall scheme that all the joined defendants knew about and in which they all participated. Bledsoe, 674 F.2d at 656.

Here, fairly read, the Indictment reveals a basis for joinder on its face. As set forth above, the two alleged conspiracies were part of an overall scheme to use the investment scheme for personal gain and to conceal assets from that scheme. While Defendant Finney is not indicted in the count alleging concealment of assets from the taxing authorities, that count nevertheless still relates to the overall scheme. Thus, Count III involves an offense embraced within the Defendants' common scheme to conceal assets. United States v. Prime Plating, Inc., 2004 WL 2801595, *4 (D. Minn. 2004) (holding joinder of defendants proper where indictment alleged two conspiracies and the conspiracies were part of common scheme, even where one defendant did not participate in one of the conspiracies). Because the Defendants are properly joined under Fed. R. Crim. P. 8(b), this Court recommends that Defendant Finney's motion to sever be denied.

Defendant Finney also argues that his trial should be severed from Defendant Sutton's pursuant to Fed. R. Crim. P. 14. He contends that the trials should be severed because the Government will be required to present evidence against Defendant Sutton on Count III that would be irrelevant and inadmissible to Defendant Finney. This fact alone is insufficient to require severance in this case because, as the Supreme Court has stated, less drastic measures,

such as limiting instructions, can cure the risk of such prejudice. Zafiro, 506 U.S. at 539; see also United States v. Warfield, 97 F.3d 1014, 1019 (8th Cir. 1996) (finding no prejudice under Rule 14 where court instructed jury to view the evidence presented against one of the defendants as only applicable to that defendant). At this pretrial stage, Defendant Finney has not established that trying the Defendants together will be unduly prejudicial. Therefore, the Court recommends that the motion to sever be denied.

## B.   Defendant Sutton's Motion to Suppress Statements

Defendant Sutton also moves to suppress any statements he made to Agents Nye and Winslow during the search of his house, arguing the interview was a custodial interrogation for which Miranda warnings were required. This Court disagrees and recommends that the motion to suppress be denied.

A law enforcement officer must advise a person of his Miranda rights before interrogating a suspect in a custodial setting. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); Illinois v. Perkins, 496 U.S. 292, 297, 110 S. Ct. 2394, 110 L. Ed. 2d 243 (1992). Miranda defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008) (citing Miranda, 384 U.S. at 444). An interrogation includes either express questioning or words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. Id.; United States v. Howard, 532 F.3d 755, 762 (8th Cir. 2008); United States v. Torres-Lona, 491 F.3d 750, 757 (8th Cir. 2007). "[A] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of Miranda warnings." United States v.

Withorn, 204 F.3d 790, 796 (8th Cir. 2000), quoted in United States v. Aldaco, 477 F.3d 1008, 1016 (8th Cir. 2007); see also United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009).

The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994). The Eighth Circuit has identified several non-exhaustive "indicia of custody" to aid courts in determining whether a Miranda warning was required:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).

Under the Griffin factors, Defendant Sutton was not in custody at the time the officers interviewed him in his home. Under the first factor, Agent Nye informed Defendant Sutton that he was not under arrest, he was free to leave, and he did not have to speak to the officers. Defendant Sutton had unrestrained freedom of movement, and in fact, left the interview to call his lawyer and later left the house altogether. Defendant Sutton also voluntarily acquiesced to being interviewed, even after he called a lawyer who told him that his statements could be used against him. Although it is possible the agent's weapons were visible, there is no evidence that the agents used strong-arm tactics or deception in their questioning. Nor was the atmosphere police dominated. Defendant Sutton was interviewed in his home office. While other agents

11

were in the house executing the search warrant, only Agents Nye and Winslow questioned Defendant Sutton and his wife was with him for the entire questioning. Finally, Defendant Sutton was not arrested at the conclusion of the interview. Applying the Griffin factors to these facts establishes that the interview was not a custodial interrogation. Rather, any statements Defendant Sutton made were voluntary and did not require any Miranda warning. Therefore, this Court recommends that the motion to suppress statements be denied.

IV. **RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Finney's (01) Motion for Severance from Co-Defendant Mark Sutton and Count 3 [Doc. No. 41] be **DENIED**;

2. Defendant Sutton's (02) Motion to Suppress Statements [Doc. No. 30] be **DENIED**; and

3. Defendant Sutton's Motion to Sever Count 3 [Doc. No. 36] be **DENIED**.

Dated: April 22, 2010
s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **May 7, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.